IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIE KUMMERLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:11-CV-2839-D |
| VS. | § | |
| | § | |
| EMJ CORP., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action alleging claims of a sexually hostile work environment and retaliation under federal and state law, defendant moves for judgment on the pleadings under Fed. R. Civ. P. 12(c). The question presented is whether plaintiff has made a plausible showing of a sexually hostile work environment claim and of an objectively reasonable belief that the employment practice of which she complained (a sexually hostile work environment) was unlawful. Concluding that plaintiff has made neither showing in her state court petition, the court grants the motion for judgment on the pleadings, but it also grants plaintiff leave to replead.

I

Plaintiff Julie Kummerle ("Kummerle") sues her former employer, EMJ Corp. ("EMJ"), for sexual harassment and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human

Rights Act ("TCHRA"), Tex. Lab. Code Ann. §§ 21.001– 21.556 (West 2006).[1]  According to Kummerle's state court petition, she was hired in 2006 by EMJ to be an office administrator in EMJ's Irving, Texas office.[2]  In November 2010 EMJ promoted Ray Catlin ("Catlin") to Senior Vice President and transferred him to the Irving office, making him Kummerle's immediate supervisor.  Kummerle alleges that, within one month of Catlin's arrival, he insisted that EMJ hire Daisy Owens ("Owens").  According to Kummerle, it quickly became clear to her and other employees that a relationship had developed between Catlin and Owens.  Kummerle alleges that, over the next five months, Catlin and Owens created a "sexually charged atmosphere" in the office that made her and other female employees uncomfortable.  She cites three specific examples of intimate contact between the two: Catlin stroked Owens back, Catlin backed Owens up against a wall with one of Owens' legs raised, and Catlin and Owens shared a small couch in Catlin's office.

In May 2011 Kummerle accompanied another EMJ employee to complain to EMJ's

---

[1]As the court noted in *King v. Enterprise Leasing Co. of DFW*, 2007 WL 2005541 (N.D. Tex. July 11, 2007) (Fitzwater, J.): "'Chapter 21 was entitled the Texas Commission on Human Rights Act until the abolishment of the Commission on Human Rights.  In 2004, the 'powers and duties' of the Commission on Human Rights were transferred to the Texas Workforce Commission Civil Rights Division.'" *Id.* at *1 n. 1 (quoting *Tex. Dep't of Criminal Justice v. Guard*, 2007 WL 1119572, at *2 n. 3 (Tex. App. 2007, no pet.) (not designated for publication)).  As in *King*, the court for clarity will refer to this claim as brought under the TCHRA.

[2]"When deciding a Rule 12(c) motion, the court accepts as true all well- pleaded facts in the complaint and views them in the light most favorable to the plaintiff." *Hoffman v. L&M Arts*, 2011 WL 3567419, at *9 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

Chief Operating Officer, Burt Odom ("Odom"), about the sexually charged atmosphere that Catlin and Owens had created. Odom later asked Kummerle whether he could inform Catlin of the identity of the person who had complained, and Kummerle consented. Kummerle alleges that her relationship with Catlin "chill[ed]" during the weeks following the making of her complaint. Two and one-half weeks later, Catlin terminated Kummerle's employment, despite her excellent performance reviews. Catlin did not provide Kummerle a specific reason for terminating her.

## II

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "'A motion brought pursuant to [Rule]12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

In deciding EMJ's motion, the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive the

defendant's motion, Kummerle must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citation omitted).

III

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). Under the TCHRA, "[a]n employer commits an unlawful employment practice if because of . . . sex . . . the employer . . . discharges an individual, or discriminates in any other manner against an individual[.]" Tex. Lab. Code Ann. § 21.051 (West 2006). Title VII also makes it unlawful "for an employer . . . to discriminate against any individual

. . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The court will address plaintiff's TCHRA and Title VII claims simultaneously because "the law governing claims under the TCHRA and Title VII is identical." *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n. 2 (5th Cir. 1999) (addressing Title VII and the TCHRA).

IV

The court turns first to Kummerle's hostile work environment sexual harassment claim.

A

To prove a hostile work environment sexual harassment claim, Kummerle must establish the following:

> (1) The employee belongs to a protected group; (2) The employee was subject to unwelcome sexual harassment; (3) The harassment complained of was based upon sex; (4) The harassment complained of affected a "term, condition or privilege of employment," *i.e.*, the sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment[.]

*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999) (on rehearing) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719-720 (5th Cir. 1986))."[3] EMJ contends that the conduct on

---

[3]"In some circumstances, a plaintiff asserting a claim of hostile work environment must also prove a fifth element: that 'the employer knew or should have known of the

which Kummerle relies is not based on sex, and even if based on sex, was not severe or pervasive enough to create a hostile work environment.

B

EMJ maintains that the conduct on which Kummerle relies to establish her hostile work environment sexual harassment claim is not based on sex. Kummerle responds that her lawsuit is analogous to cases where pornography or sexual graffiti has been introduced into the workplace. *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477-78 (5th Cir. 1989); *Petrosino v. Bell Atl.*, 385 F.3d 210, 221-22 (2d Cir. 2004). In the cases on which Kummerle relies, however, the courts did not find that the work environment was hostile toward women merely because pornography and sexual graffiti were present in the workplace. Rather, both courts held that a reasonable jury could find that the work environment—which included viewing pornography or sexual graffiti—was more offensive or derogatory to women as opposed to men, and therefore made the discrimination "based on sex." *See, e.g., Waltman*, 875 F.2d at 478 n. 3 (quoting *Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir. 1988)) ("'[A]ny reasonable person would have to regard these cartoons as highly offensive

---

harassment in question and failed to take prompt remedial action.'" *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *8 n. 8 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001)). "But where, as here, the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above." *Id.* (citations and internal quotation marks omitted); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

to a woman.'"); *Petrosino*, 385 F.3d at 221 ("[T]he evidence . . . would permit a jury to conclude that a reasonable person . . . would consider the sexually offensive comments and graffiti . . . more offensive to women than to men.").  But as Kummerle's petition is framed, she does not plead a plausible basis for the court to draw the reasonable inference that the intimate (and, apparently, consensual) contact between Catlin and Owens—Catlin's stroking Owens' back, Catlin's backing Owens up against a wall with one of Owens' legs raised, and Catlin and Owens' sharing a small couch in Catlin's office—was more offensive to women than to men.  Taken as true, the allegations of the petition establish that Catlin and Owens engaged in consensual, intimate conduct that made the work environment "sexually charged," which should be equally offensive to men and to women.  The nature of the conduct, unlike that involved in cases like *Waltman* or *Petrosino*, does not degrade or offend one sex more than the other.  The court therefore cannot draw the reasonable inference that "[t]he harassment complained of was based upon sex[.]"  *Watts*, 170 F.3d at 509.[4]

## C

EMJ also challenges whether the petition establishes that the alleged hostile work environment was "sufficiently severe or pervasive so as to alter the conditions of

---

[4]In her petition, Kummerle alleges that "[t]he harassment to which Plaintiff was subjected was based on sex."  Pet. ¶¶ 6.1.3, 6.2.3.  Such an allegation is conclusory and will not be considered by the court in assessing defendant's motion.  *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

employment and create an abusive working environment[.]"[5] *Watts*, 170 F.3d at 509.  Not all harassment, however, "including 'simple teasing, offhand comments, and isolated incidents (unless extremely serious),' will affect a 'term, condition, or privilege of employment.'" *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (internal citations and quotation marks omitted)); *see also DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995) ("A hostile environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace. Any lesser standard of liability, couched in terms of conduct that sporadically wounds or offends but does not hinder a female employee's performance, would not serve the goal of equality.").

Viewing Kummerle's pleadings in the light most favorable to her, they do not enable the court to draw the reasonable inference that her work environment was hostile.  Although Kummerle does not concede that the alleged conduct does not qualify as "severe," she primarily argues that the conduct was so pervasive that the work environment was hostile. But Kummerle only describes three specific acts over a five month period that contributed

---

[5]When determining whether a work environment is hostile or abusive, a court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

to the hostile work environment.[6]  Moreover, none of the three specific acts was directed at Kummerle.  Instead, the acts were between two (apparently consenting) adults, undertaken in the view of other employees, and not (as the petition is pleaded) in conjunction with other acts that could conceivably combine to create a hostile work environment.[7]  Nor does Kummerle allege that she was physically threatened by the acts or that they unreasonably interfered with her work performance.  Thus Kummerle's pleadings do not allow the court to draw the reasonable inference that her work environment was "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment[.]"  *Watts*, 170 F.3d at 509.[8]

    Because Kummerle's petition does not allow the court to draw the reasonable inference that she was harassed "because of sex" or that the alleged behavior was "severe or

---

[6]Kummerle's petition specifies three examples of employees "observing close intimate personal contact" between Catlin and Owens, and these examples are provided "without limitation."  Pet. ¶ 4.6.  Kummerle relies on the "without limitation" language to support her claim that the harassment was more pervasive than the three specific incidents cited.  Such an assertion, however, is not "factual content that allows the court to draw the reasonable inference" that the conduct was pervasive enough to establish a hostile work environment.  *See Iqbal*, 129 S. Ct. at 1949.

[7]The court does not suggest that consensual sexual conduct that is observed by coworkers can never be taken into account when determining whether the coworkers have been subjected to a sexually hostile work environment.  But Kummerle does not allege that the actions of Catlin and Owens took place within a broader context of conduct that, in combination, created a sexually hostile work environment.

[8]Kummerle alleges that she and "other female employees became increasingly uncomfortable with the sexually charged atmosphere in the office between Mr. Catlin and Ms. Owens."  Pet. ¶ 4.6.  This allegation, however, does not enable the court to draw the reasonable inference that Catlin and Owens' behavior was more offensive or derogatory toward women.

pervasive" enough to create a hostile work environment, the court grants EMJ's Rule 12(c) motion for judgment on the pleadings.

## V

The court turns next to Kummerle's retaliation claim.

## A

Kummerle's retaliation claim is based on the "opposition clause" of Title VII; Kummerle must therefore allege that she was retaliated against because she "opposed [a] practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). To establish this claim, however, Kummerle must have had a "reasonable belief that the employer was engaged in [an] unlawful employment practice[]." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000)). A plaintiff's belief is not objectively reasonable if the law is settled that the employment practice complained of is not unlawful under Title VII. *See Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *10 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Wilson v. Delta State Univ.*, 143 Fed. Appx. 611, 613-14 (5th Cir. 2005) (per curiam)).

## B

Kummerle has failed to plead facts that enable the court to draw the reasonable inference that, when she complained to Odom, her belief was objectively reasonable that she was being subjected to a sexually hostile work environment. This is because, as explained above, the conduct between Catlin and Owens that she alleged had occurred would not have been more offensive to women than to men, and the alleged harassment could not therefore

have been based on sex.  As her petition is pleaded, Kummerle could not have had the objectively reasonable belief that the consensual conduct between Catlin and Owens—which over a five-month period had only specifically involved Catlin's stroking Owens' back, Catlin's backing Owens up against a wall with one of Owens' legs raised, and Catlin and Owens' sharing a small couch in Catlin's office—had created a sexually hostile work environment at the EMJ Irving office.

The court therefore grants EMJ's motion for judgment on the pleadings and dismisses Kummerle's retaliation claim.

VI

Although the court is granting EMJ's motion for judgment on the pleadings, it will permit plaintiff to replead.  *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).  Because there is no indication that Kummerle cannot, or is unwilling to, cure the pleading defects the court has identified, the court grants her 30 days from the date this memorandum opinion and order is filed to file an amended complaint. Moreover, Kummerle filed this case in state court, under the pleading standards that governed in that forum.  She should be given an opportunity to replead under the federal pleading standards.  *See, e.g., Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 849 (N.D. Tex. 2011) (Fitzwater, C.J.) (granting similar relief in removed case).

- 11 -

\*   \*   \*

For the reasons stated, the court grants EMJ's October 31, 2011 Rule 12(c) motion for

judgment on the pleadings, but it also grants her leave to replead.

**SO ORDERED.**

February 15, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE